UNITED STATES of America,
Plaintiff-Appellant,

v.

Howard C. PHELPS, Defendant-Appellee.

No. 30237.

United States Court of Appeals,
Fifth Circuit.

May 14, 1971.

Rehearing Denied June 17, 1971.

Seagal V. Wheatley, U. S. Atty., Haskell Shelton, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellant.

James M. Speer, El Paso, Tex., for defendant-appellee.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

GOLDBERG, Circuit Judge:

This is an appeal from an order of the court below suppressing certain statements made by the defendant during police questioning. The government appeals,[1] claiming that the statements should have been admitted into evidence because (1) the defendant was not "in custody" at the time the statements were made and thus had no right to the protections afforded by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, and (2) even if the custodial interrogation provisions of *Miranda* did apply, the defendant was properly warned of his rights and voluntarily waived those rights when he made the statements in issue to the investigators.

The defendant, Howard C. Phelps, owned the Dyer Loan and Trading Com-

1. Such an appeal is authorized by the Omnibus Crime Control Act of 1968, 18 U.S.C.A. § 3731.

pany in El Paso, Texas. On November 20, 1969, a special investigator with the Alcohol, Tobacco and Firearms Unit of the United States Treasury Department, his assistant, and two El Paso police officers went to the defendant's place of business. The purpose of their visit was to determine if Phelps had complied with the record keeping provisions of certain federal firearms legislation because a previous visit in September of 1969 had disclosed certain irregularities. Immediately upon entering the defendant's store in November the officers noticed a weapon in a showcase which appeared to be a cut down rifle. The investigator asked to see the weapon and Phelps complied. Upon examination the investigator determined that it was an illegal weapon. The investigator then had his assistant advise Phelps of his *Miranda* rights. A standard rights form was read and Phelps was offered an opportunity to sign a printed waiver of rights. Phelps declined to sign the waiver, but indicated that he did not want a lawyer present and that he knew his rights.

The officers remained in Phelps' establishment, and he later made certain statements to them which were incriminating. At his subsequent trial, a motion was made to suppress the introduction of these statements into evidence. After a hearing on the motion to suppress, the trial court granted defendant's motion, and the government now appeals from that decision.

The government initially contends that Phelps was not "in custody," as that term is used in *Miranda*, and that his incriminating statements are therefore not subject to suppression on the ground that he did not voluntarily waive his *Miranda* rights. In essence, the government seems to argue that it was permissible for the investigators to continue to question Phelps after he refused to sign the *Miranda* rights waiver form because in this situation the *Miranda* protections were wholly inapplicable. We need not decide the appropriate procedures applicable to non-custodial interrogations, however, since we find that

under the circumstances Phelps was in custody within the meaning of *Miranda,* and that he was therefore entitled to the full protections afforded by that decision.

In *Miranda* the Court said that it meant by the term custodial interrogation "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. In subsequent cases in this circuit, when called upon to further elucidate this concept, our court has consistently refused to formulate a general rule to distinguish custodial from non-custodial interrogations. Instead, we have deliberately followed a case-by-case approach. *See* United States v. Akin, 5 Cir. 1970, 435 F.2d 1011; United States v. Montos, 5 Cir. 1970, 421 F.2d 215. Nevertheless, piecing together the cases in this court and others, some things have become clear. For example, it is now certain that the mere fact that interrogation takes place in the familiar surroundings of the defendant's home or place of business rather than in the police station does not necessarily mean the defendant is not being subjected to custodial interrogation. Orozco v. Texas, 1969, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311. Nor must the defendant be under formal arrest prior to the interrogation in order for *Miranda* rights to arise. Windsor v. United States, 5 Cir. 1968, 389 F.2d 530. On the positive side, we have noted several significant factors which should be considered in determining whether or not a defendant is in custody. For example, probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant have all been deemed relevant. United States v. Montos, *supra.* However, throughout the decisions one of these factors has consistently impressed our court: whether or not the focus of the investigation has finally centered on the defendant. In *Miranda* itself the Supreme Court explained that "in custody" was a short-hand phrase for what Escobedo v. Illinois, 1964, 378 U.S. 478, 490,

84 S.Ct. 1758, 12 L.Ed.2d 977, described as an investigation which has focused on an accused. Similarly, in Windsor v. United States, *supra*, 389 F.2d at 533, we held that *Miranda* was applicable since

"The obvious purpose of the agents interrogating him was to elicit an incriminating statement for 'the investigation was no longer a general inquiry into an unsolved crime' but had begun 'to focus on a particular suspect' namely, Windsor."

In Bendelow v. United States, 5 Cir. 1969, 418 F.2d 42, 47, we said:

"We agree with the trial judge that after Hart (the police officer) discovered the alterations in the license the investigation focused upon Bendelow and a *Miranda* warning was in order before any statement by Bendelow would be admissible."

*See also*, United States v. Montos, *supra*, 421 F.2d at 223, where we held that the defendant had not been subjected to custodial interrogation because the investigation, rather than focusing on the defendant, was still in the general investigatory stage of "screening crime from mishap," and United States v. Akin, 5 Cir. 1970, 435 F.2d 1011, where we held that *Miranda* did not apply because the investigation was still at an early nonaccusatory stage.

■ Evaluating the present case in light of these prior decisions, we think that Phelps was entitled to the privileges and protections of *Miranda*. Four policemen with prior knowledge of a firearms infraction went to the defendant's place of business, and, as they testified, "were expecting trouble." They clearly sought out Phelps for the purpose of investigating him in particular for these specific crimes. This was no general on the scene questioning of bystanders to determine whether a crime had been committed; this was accusatory questioning. Moreover, if the investigation was not focused on the defendant when the officers entered the building, it certainly focused on him a few seconds later

when the investigators discovered the illegal weapon in the showcase. We think that the presence of four officers in a man's place of business holding a weapon which they discovered on the premises and which they have announced is illegal, presents a situation which is intimidating enough to warrant the application of the *Miranda* privileges and protections. The investigators had probable cause to arrest Phelps, and he had reason to believe that they would do so. Once the officers found the illegal weapon the investigation focused on Phelps, and the panoply of rights enunciated in *Miranda* became applicable. Bendelow v. United States, *supra*.

■ The government's next contention is that even if, as we have found, Phelps was entitled to the *Miranda* protections, he waived those rights. There may be some merit in this argument. In *Miranda* the Court said:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–474, 86 S.Ct. at 1627.

In the present case the record shows that immediately after the investigators discovered the illegal weapon, they properly warned Phelps of his rights. Phelps, while professing to understand and declining the assistance of a lawyer, indicated by his refusal to sign the waiver that he did not wish to waive his right to remain silent. The officers' interrogation, therefore, should have ceased at this point.

However, even though questioning must cease at this point, we have held that the mere refusal to sign a waiver does not automatically render inadmissible all further statements of the defendant. In United States v. Hopkins, 5 Cir. 1970, 433 F.2d 1041, a situation arose which may well be similar to the instant case. There the defendant refused to sign the waiver form, but when the interrogating agent got up to leave, the defendant initiated further conversation.

We held that the subsequently obtained information was admissible because the defendant had waived his right to remain silent by voluntarily initiating subsequent conversation regarding his alleged complicity in the offense under investigation. In so holding, we said:

"Hopkins argues that after he refused to sign a written waiver of his constitutional rights, Agent Hanley should have immediately terminated the interrogation. Any statement made to Hanley after this refusal to sign the waiver must therefore be considered inadmissible. This argument is without merit. The undisputed facts reveal that after Hopkins refused to sign the waiver, Hanley indeed attempted to terminate the interrogation. It was Hopkins who initiated the subsequent conversation by insisting that he 'didn't steal the car in the first place.' While *Miranda* places upon the Government a heavy burden both with regard to inculpatory and exculpatory remarks 'to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel,' 384 U.S. at 475, 86 S.Ct. at 1628, we feel this burden has here been clearly met. There is no evidence that Hanley persisted in interrogating Hopkins despite his refusal to waive his constitutional rights. Nor is there evidence that Hopkins manifested inconsistent conduct because of confusion. See United States v. Nielsen, 7 Cir. 1968, 392 F.2d 849. Rather, the record shows that Hopkins, after refusing to waive his rights and upon seeing Hanley get up to leave, initiated the ensuing conversation in order to exculpate himself. The ensuing questions asked by Hanley were simply designed to pursue the line of inquiry begun by Hopkins. This case then resembles those instances where the accused voluntarily confesses prior to questioning. United States v. Welsh, 5 Cir. 1969, 417 F.2d 361; Stone v. United States, 10 Cir. 1967, 385 F.2d 713; Lamb v. Peyton, W.D.Va.1967, 273 F.Supp. 242. We feel that the following language of the Fourth Circuit is particularly relevant to the present case:

"Thompson complains that an oral confession given to agents of the F.B.I. was admitted even though he had refused to sign a written waiver of his rights. The evidence discloses that Thompson, an intelligent man, was informed of his rights in the manner required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He declined to sign a written waiver, but he stated that he understood his rights. Thereafter he freely and voluntarily answered questions. He was not subjected to prolonged interrogation or in any way coerced. In view of Thompson's intelligence his affirmative statement that he understood the explanation of his rights, and the voluntariness of his confession, we hold that his refusal to sign a written waiver did not render the confession inadmissible. United States v. Hayes, 385 F.2d 375 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968)." United States v. Thompson, 4 Cir. 1969, 417 F.2d 196, 197, cert. denied, 1970, 396 U.S. 1047, 90 S.Ct. 699, 24 L.Ed.2d 692.

We therefore hold that Hopkins waived his constitutional privilege so that his statements to Agent Hanley are admissible." 433 F.2d at 1044.

In the present case we are unable to tell whether Phelps validly waived his right to remain silent or not. It is clear that after Phelps refused to sign the waiver, the officers should have ceased interrogating him. It is also clear that subsequent conversation did occur between the investigators and Phelps. The hearing on the motion to suppress does not reveal, however, whether the subsequent questions by the officers were the result of voluntary conversation initiated by Phelps or whether these questions were initiated by the officers themselves without any instigation by Phelps.

If the former situation obtains, then under our decision in *Hopkins*, Phelps' subsequent answers would be admissible. If the latter situation obtains, however, *Miranda* compels that we hold the answers inadmissible. The record of the hearing is silent as to these crucial facts, probably because the trial court made its determination prior to our decision in *Hopkins*. We think, therefore, that justice will best be served by holding a further evidentiary hearing to determine whether Phelps voluntarily waived his right to remain silent.

For the foregoing reasons, this matter is remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded.