UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony S. CAROLLO,
Defendant-Appellant.

No. 74–1420.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1975.

Rehearing and Rehearing En Banc
Denied March 13, 1975.

Michael F. Barry, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Stephen A. Mayo, J. Phillip Krajewski, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

On Petition for Rehearing

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

In response to the petition for rehearing, the prior unpublished opinion of the Court is withdrawn and the following is substituted.

Defendant-appellant Carollo, a restaurant proprietor, was convicted of having violated 26 U.S.C. § 5117(a) by purchasing distilled spirits for resale from one who was neither exempt nor a wholesale dealer in liquor who had paid the special dealer's tax.[1] Following his conviction Carollo was placed on six-months inactive probation and fined $50. The sole issue before this court on appeal is whether certain statements made by Carollo during an administrative inspection of his restaurant should have been excluded from evidence. Carollo argues that they should have been, alleging that these statements, which were incriminating, were elicited from him after he was in custody but before he was given any Miranda[2] warnings.

On June 8, 1972, Special Agent Klotz and other agents of the Treasury's Bureau of Alcohol, Tobacco and Firearms (ATF), pursuant to warrant, conducted an administrative inspection of the Venezia Restaurant. Upon entering the restaurant, Klotz identified himself and his fellow agents and explained the purpose of his visit. Carollo, in turn, introduced himself as the owner and proprietor of the restaurant and offered to help the ATF agents in any way that he could while they conducted their inspection. He then moved freely about his restaurant and on several occasions left the agents and waited on customers who had entered. While inspecting, Klotz noticed that a number of whiskey bottles behind the bar had price markings on them which resembled those used by retail distributors. His suspicions aroused, he asked Carollo where he purchased his spirits. Carollo at first named six wholesalers but then admitted that when he ran short he sometimes purchased liquor from "my friend over at John's Liquor Store." Upon further questioning, he gave the agents the location of the store and acknowledged that he had been purchasing liquor there for some time. At this point Klotz picked up two bottles of whiskey with prices marked on them and asked Carollo whether they had been purchased from "John's." Upon receiving an affirmative answer, he seized the bottles. Subsequent investigation revealed that "John's" was in reality "L & J Liquor Store." Its operators were the holders of only a federal retail special tax stamp. At no time during the inspection of his restaurant was Carollo read his Miranda rights.

The Fifth Amendment does not preclude the prosecution from making use of a defendant's self-incriminating statements; rather, it forbids the state to compel a criminal defendant to be a witness against himself. In Miranda v. Arizona, *supra*, the Supreme Court determined that a custodial investigation is so fraught with coercive possibilities that statements made under such conditions (absent an attorney) should be considered compelled unless the defendant had been read and waived his now famous Miranda rights. But, absent custodial investigation or interrogation, the Miranda warnings are not necessarily required. This is so since, except possibly in some extremely rare case which we need not attempt to hypothesize here, absent custody the element of coercion disappears. Thus, the controlling ques-

---

1. § 5117. Prohibited purchases by dealers

    (a) General.—It shall be unlawful for any dealer to purchase distilled spirits for resale from any person other than—

    (1) a wholesale dealer in liquors who has paid the special tax as such dealer to cover the place where such purchase is made; or

    (2) a wholesale dealer in liquors who is exempt, at the place where such purchase is made, from payment of such tax under any provision of this chapter; or

    (3) a person who is not required to pay special tax as a wholesale dealer in liquors.

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tion in this case becomes whether or not Carollo was in custody at the time he made his incriminating admission that he purchased distilled spirits from "John's." We conclude that he was not; that *Miranda* warnings were not, therefore, required; and that his conviction should be affirmed.

■ This court has attempted to define the meaning of "in custody" or "custodial investigation," but its attempts have produced limited success. We know that *Miranda* teaches that "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way." *Miranda, supra,* at 444, 86 S.Ct. at 1612. But this knowledge has not proved overly helpful for it leaves open the definition of the most important concept–custody. Lacking a general rule by means of which we can mechanically distinguish "custodial" from "non-custodial" interrogation, we have chosen to determine this issue on a case-by-case basis. Brown v. Beto, 468 F.2d 1284 (5th Cir. 1972); United States v. Phelps, 443 F.2d 246 (5th Cir. 1971). Nevertheless, we have, as Carollo points out, identified four significant factors which should be considered in making the determination. These are, (1) probable cause to arrest, (2) subjective intent of the police, (3) subjective belief of the defendant, and (4) focus of the investigation. *Brown, supra,* 468 F.2d at 1286; *Phelps, supra,* 443 F.2d at 247.

An examination of the facts shows that of the four factors mentioned above only the focus of investigation factor is even arguably present in the case under consideration. There was no probable cause to arrest Carollo before he made his damaging admissions. The price markings on the bottles were ambiguous in nature; the bottles could have come from any number of sources, including a wholesaler. As to subjective intent of the police, Agent Klotz testified that he believed that Carollo was entirely free to leave at any time during the inspection and that he would not have prevented him from leaving. Carollo was never told that he could not leave; in fact, he walked away several times during his conversations with the ATF agents to conduct restaurant business. Carollo's subjective belief about his freedom of action was indicated by his willingness to help the agents while conducting business as usual. Carollo insists, however, that when Agent Klotz began questioning him about where he got his liquor he became the focus of a criminal investigation.

■ We shall assume without deciding that Agent Klotz's questions were more than mere administrative inquiries and that they constituted a criminal investigation which had focused upon Carollo. Even accepting Carollo's characterization of Agent Klotz's questions, we are unpersuaded that, under the facts of this case, the focus-of-investigation factor alone was enough to create a custody situation. We decide this realizing full well that several of our past decisions have emphasized the importance of this particular factor. *Phelps, supra;* Bendelow v. United States, 418 F.2d 42 (5th Cir. 1969), cert. denied, 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970); Windsor v. United States, 389 F.2d 530 (5th Cir. 1968).

■ In spite of the broad language of these cases, it is clear that in each the police had probable cause to arrest before they focused their investigation on the defendant. In *Phelps* the ATF agents knew that there had been a violation of the law as soon as they observed the cutdown rifle in the showcase. Similarly, in *Bendelow* the highway patrolman had probable cause to make an arrest as soon as he noticed the altered license. *Bendelow, supra,* 418 F.2d at 47, fn. 6. Likewise, in *Windsor,* "Sharp had already given the agents sufficient evidence for them to conclude that Windsor was also involved in the interstate transportation of the stolen car. There was therefore probable cause to arrest him." *Windsor, supra,* 389 F.2d at 534. In short, we have found no case in which it has been held that a defendant is "in

custody" when the focus factor alone is present. Nor do we feel that such a *per se* holding would be wise. By way of example, we fail to see how it could possibly be said that a person at the opposite end of a telephone wire is "in custody" just because the policeman talking to him has focused an investigation on him. We choose to remain true to the basic teachings of *Brown* and *Phelps* that decisions on custody must be made on a case-by-case basis.

Since we are convinced that Carollo was not in custody at the time he was questioned by Klotz, his conviction is affirmed.