Lawrence Ray ALBERTI,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director,
Texas Dept. of Corrections,
Respondent-Appellee.

No. 75–2253.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1975.

Before TUTTLE, THORNBERRY and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge.

Lawrence Ray Alberti appeals the denial of habeas corpus relief from a Texas state sentence. We reverse.

On June 4, 1970, about 3:30 p. m., officer Bernard D. Jackson, narcotics division of the Houston Police Department, received a telephone call from an unnamed confidential informant who had provided reliable information on at least two previous occasions. The informant stated that Lawrence Ray Alberti could be found in Apartment 252 of the Gulfland Apartments on Rustic Lane in Houston, that he would have in his possession a large quantity of marihuana and LSD for use and sale, and that he would be there for only a short period of time.

Accompanied by fellow narcotics officers Garcia and O'Briant, officer Jackson proceeded directly to the named apartment, arriving there approximately twenty minutes after receipt of the call. Concluding that the urgencies of time would not permit it, the officers did not stop to obtain a search or arrest warrant.

The officers knocked on the apartment door. It was opened by Alberti. The officers asked if they could speak with "Lawrence". Petitioner responded, "I am Lawrence. Come on in". The three officers then entered the living room of the apartment, displaying their official identifications as they entered. In addition to Alberti, there were four other adults and some children in the apartment.

Once inside the apartment, officer Jackson observed a shoebox on a bar approximately ten to twelve feet directly in front of the door, containing what appeared to be stacks of plastic bags with a greenish plant substance inside. Jackson walked over to the shoebox, opened one of the bags, and asked who it belonged to. Alberti responded that it was his and that the rest of the people in the apartment were not involved in it. It was not until then that Alberti was arrested and given the *Miranda* warnings.[1]

He was then asked if there was any more in the apartment that he knew of. He replied that there was and directed officers to a refrigerator from which he removed a glass containing some ninety odd cellophane wrapped packages of pills, later determined to be LSD, and two needles and syringes.

On December 17, 1970, after a jury trial, Alberti was convicted of the possession of marihuana and sentenced by the jury to twenty years in prison. On direct appeal, the Texas Court of Criminal Appeals affirmed, *Alberti v. State*, Tex.Cr.App., 1973, 495 S.W.2d 236. Subsequently, after fully exhausting available State remedies, Alberti filed his application for federal habeas corpus relief on July 9, 1973. The Court reviewed the record and denied Alberti's application without a hearing.

Alberti appeals, urging that evidence of his self-incriminating response to the inquiry of the officers was erroneously admitted in violation of *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and *Brown v. Beto*, 5 Cir., 1972, 468 F.2d 1284.

In *Miranda* the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination", 384 U.S. at 444, 86 S.Ct. at 1612.

Alberti contends that his answer to officer Jackson's query as to who the marihuana belonged to was the product of "custodial interrogation", hence inadmissible.

 What it takes to amount to "custodial interrogation" has given the state and federal courts no small amount of difficulty. *Miranda*, of course, tells us that "custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived

1. *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

of his freedom of action in any significant way", 384 U.S. at 444, 86 S.Ct. at 1612. This definition enunciates no hard and fast concept of "custody". This Court, therefore, has adopted the judicial approach of deciding the issue on a case-by-case basis, *United States v. Carollo*, 5 Cir., 1975, 507 F.2d 50; *Brown v. Beto*, 5 Cir., 1972, 468 F.2d 1284; *United States v. Phelps*, 5 Cir., 1971, 443 F.2d 246; *United States v. Montos*, 5 Cir., 1970, 421 F.2d 215.

■ We have attributed special significance to four factors: (1) probable cause to arrest, (2) subjective intent of the police, (3) subjective belief of the defendant, and (4) focus of the investigation, *Carollo, supra*, 507 F.2d at 52; *Brown, supra*, 468 F.2d at 1286; *Phelps, supra*, 443 F.2d at 247; *Montos, supra*, 421 F.2d at 223.[2]

Although previous cases have stated that the focus-of-investigation factor is the most compelling,[3] the recent case of *United States v. Carollo, supra*, clearly holds that this factor alone is not enough to create a custody situation. In *Carollo* the Court pointed out that probable cause to arrest had existed in all the cases where the focus factor was considered important, thus implying that focus without probable cause is insufficient to establish "custody".

The case most heavily relied on by Alberti is *Brown v. Beto, supra*. The District Court found *Brown* distinguishable on its facts, and we think this was correct. We feel constrained to reverse, however, on the basis of two previous decisions of this Court, *United States v. Phelps*, 5 Cir., 1971, 443 F.2d 246, and *Agius v. United States*, 5 Cir., 1969, 413 F.2d 915.

In *Phelps*, Alcohol, Tobacco & Firearms agents and local police officers went to the defendant's place of business to determine if he had complied with the record keeping provisions of certain federal firearms legislation. The officers immediately upon entering noticed a weapon in a showcase which appeared to be an illegal weapon. Phelps subsequently made some incriminating statements to the officers. The Court spoke to the issue of whether Phelps was in custody within the meaning of *Miranda* as follows:

[I]f the investigation was not focused on the defendant when the officers entered the building, it certainly focused on him a few seconds later when the investigators discovered the illegal weapon in the showcase. We think that the presence of four officers in a man's place of business holding a weapon which they discovered on the premises and which they have announced is illegal, presents a situation which is intimidating enough to warrant the application of the *Miranda* privileges and protections. The investigators had probable cause to arrest Phelps, and he had reason to believe that they would do so. Once the officers found the illegal weapon the investigation focused on Phelps, and the panoply of rights enunciated in *Miranda* became applicable. 443 F.2d at 248.

In *Agius*, the defendant was being investigated concerning the robbery of a saving and loan association because of his resemblance to pictures of the culprit taken during the robbery by a hidden camera. The defendant claimed that he could produce people who could vouch for his whereabouts the afternoon of the robbery and went to his car to locate a paper containing the address of one of these persons. While the defendant was rummaging through his car looking for this paper, the investigating agents no-

---

**2.** Compare the "objective reasonable man" factors employed by the Ninth Circuit to determine whether a person is in custody; the language used to summon the suspect; the physical surroundings of the interrogation; the extent to which the suspect is confronted with the evidence of his guilt; and pressure exerted to detain him, *United States v. Luther*, 9 Cir., 1975, 521 F.2d 408, 410.

**3.** *See, e. g., Brown v. Beto*, 5 Cir., 1972, 468 F.2d 1284, 1286; *United States v. Phelps*, 5 Cir., 1971, 443 F.2d 246, 247–48; *Bendelow v. United States*, 5 Cir., 1969, 418 F.2d 42, 47.

ticed a toy gun in the glove compartment. The agents questioned the defendant concerning the presence of the gun and he made some incriminating responses. The Court discussed the question of whether the defendant was "in custody" at the time of the agents questioning in the following language:

> [I]t is clear that appellant was deprived of his freedom of action in a significant way at least immediately after the agents saw the toy gun in his car. Assuming that prior to that time the questioning was non-custodial and investigatory, it is beyond the capacity of a reasonable mind to suppose appellant was "free to go" after the discovery of the gun, viewed from whatever standpoint. The discovery of the gun, along with the resemblance between appellant and the robber, established probable cause and focused the identification. It must have made clear to both agents and appellant that the latter was going to be detained unless and until the investigation was clearly to take a different direction. The adversary process had, at least at that point, begun. Thus, the trial court's findings regarding the admissibility of the statements made by appellant as a result of questioning initiated by the agents in an attempt to explain the presence of the gun are clearly erroneous. 413 F.2d at 918–19.

 In the instant case the confidential informant had provided the officers with only the name of Lawrence Alberti. The officers at the door of the apartment asked to speak with "Lawrence", whereupon petitioner identified himself as Lawrence and invited the officers in. The officers saw the contraband, asked who it belonged to, and Alberti incriminatingly responded. The discovery of the marihuana, coupled to the information provided by the informant, established probable cause and focused the investigation on Alberti. Before being questioned he should have been given the *Miranda* warnings. His admission in response to the question should not have been admitted at trial. Alberti's statements concerning the location of other narcotics obtained after the benefit of a *Miranda* warning would also be inadmissible as tainted by the prior illegal confession.[4] See Randall v. Estelle, 5 Cir., 1974, 492 F.2d 118.

We candidly state that if we were writing on a clean slate we would likely hold that the circumstances of this case were not so compulsive as to infringe upon *Miranda* objectives. Nevertheless, the cited cases require reversal. Bound by those precedents, we follow them.

The denial of the habeas corpus petition by the District Court is hereby

Reversed.

TUTTLE, Circuit Judge (concurring specially):

· I concur in the judgment of the court and in all that is said in the opinion except for the penultimate paragraph.

4. The record reveals that the indictment of Alberti in the instant case charged him only with possession of marihuana. It makes no mention of LSD or other narcotics. Record of Trial, p. 4.