Elton Wayne HANCOCK,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 76–3645
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 2, 1977.

Rehearing and Rehearing En Banc Denied Oct. 12, 1977.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al.,* 5 Cir., 1970, 431 F.2d 409.

Leon S. Hirsch (Court-appointed), Houston, Tex., for petitioner-appellant.

Elton Wayne Hancock, pro se.

John L. Hill, Atty. Gen., Romaner J. Strong, Jr., Asst. Atty. Gen., Houston, Tex., David M. Kendall, Jr., 1st Asst. Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The appellant was convicted of murder with malice aforethought, he received a sentence of 99 years, and the conviction was affirmed on appeal. *Hancock v. State of Texas*, 462 S.W.2d 36 (Tex.Cr.App.1971). The facts are set forth in detail in that opinion. His first federal habeas petition was denied for lack of exhaustion. A habeas petition was denied without a hearing by the state district court on March 28, 1972. Its decision was affirmed by the Texas Court of Criminal Appeals without written order on April 12, 1972, and on reapplication on May 24, 1972.

The appellant raised the issue of the voluntariness of his confession at his state trial at which time he was afforded a full *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) hearing. The court found the confession to be voluntary.

The appellant's aunt, Nettie Olds, was found stabbed to death in her home in Baytown, Texas, on November 1, 1967. Fingerprints were taken at the scene. During the course of the investigation, Baytown Police Department detectives sought to take "eliminator prints" from members of the deceased's family, including the daughter of the deceased and the appellant. The purpose of these prints was to eliminate members of the deceased's family as suspects in the investigation. Detective Merchant of the Baytown Police Department asked appellant to accompany him to the station. Appellant was not placed under arrest at this time, nor were the detectives concentrating on him as the focal point of the investigation. They arrived about 9:00 p. m. and talked till about 9:35 p. m. when the prints were taken. During the first interview, appellant indicated that he had visited his aunt on the evening of the murder, that he had left and later returned, but hearing no answer to his knock, had gone home. He also indicated that police would likely find his fingerprints on a knife at his aunt's house since he had used the knife to prepare a sandwich during his visit.

After the prints were taken, the detectives commenced a second interview of appellant to determine the conditions of his return to the aunt's house and to ascertain whether appellant heard or saw anything suspicious. In discussing the visit to the home of his aunt, petitioner made different statements about where he parked his car and the number of times he went to the house. He made the statement that he had visited the house only once. The detectives became suspicious of appellant because his rendition of the sequence of events during the second interview contradicted his previous statement. At this point, about 10:12 p. m., Detective Merchant advised petitioner not to make any more statements because he was a suspect. A magistrate was then summoned and the appellant said nothing further until the judge arrived at about 10:45 p. m. and proceeded to give petitioner full warnings in accordance with Texas law, Art. 15.17, Vernon's Ann.C.C.P., and the *Miranda* (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) guidelines.

After the warnings were given by the magistrate, the appellant was again advised by Detective Merchant of his rights to remain silent and to counsel. He indicated he wished to waive his rights and to make a statement concerning his commission of the crime. The record contains a waiver form titled "Confession Warning—1967" signed

by the appellant and dated November 4, 1967, at 10:45 p. m. It enumerates all the *Miranda* rights. The "Voluntary Statement" form that petitioner signed, wherein he made his confession, also contained warnings of the right to counsel and to remain silent. Additionally, petitioner's father was called during the giving of the statement, and conferred with his son for some five minutes.

The trial court concluded that the statement was "knowingly, intelligently, freely and voluntarily made." The Court of Criminal Appeals affirmed that decision. The district court dismissed the habeas petition, after appointing counsel for petitioner, concluding that no constitutional violation occurred so as to violate petitioner's rights under the Fifth and Sixth Amendments.

The appellant contends that "custodial interrogation" had begun well before he was given his *Miranda* warnings thus the confession was tainted and involuntary. *Miranda* defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," 384 U.S. at 444, 86 S.Ct. at 1612. Furthermore, in applying the *Miranda* definition, this Court has decided the issue of "custodial interrogation" on a case-by-case basis. *United States v. Carollo*, 507 F.2d 50 (5th Cir. 1975).

■ In *Carollo* the court attributed special significance to four factors: (1) probable cause to arrest, (2) subjective intent of the police, (3) subjective belief of the defendant, and (4) focus of the investigation. *Accord, Alberti v. Estelle*, 5 Cir. 1975, 524 F.2d 1265, 1267 citing numerous cases. In the instant case, the police did not have probable cause to arrest the appellant when the questioning began, they had not focused their investigation on him, and they intended merely to take his fingerprints for elimination purposes in their investigation. Moreover, in *Alberti, supra*, we noted that focus without probable cause

is insufficient to establish "custody." Thus, appellant was not in custody "or otherwise deprived of his freedom of action in any significant way." Recently the Supreme Court in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), rejected an identical contention on facts which more closely approached custodial interrogation than those *sub judice*.

■ Here, the appellant volunteered information about frequent visits to his aunt's house, and the fact that he had been in the house on the night in question. Upon a contradiction in his story, the police ceased the interview and summoned a magistrate. The record totally lacks any evidence that appellant was coerced into confessing. He was advised of his rights, he understood them, and he voluntarily waived them. Far from offending appellant's rights, the detectives exercised a commendable degree of caution by stopping the interview and giving the *Miranda* warnings in a timely fashion.

AFFIRMED.