**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Amparo DEL SOCCORRO CASTRO De Graulau, Defendant-Appellant.**

**No. 77–5451.**

United States Court of Appeals,
Fifth Circuit.

May 17, 1978.

---

Allen L. Jacobi, Coconut Grove, Fla., for defendant-appellant.

J. V. Eskenazi, U. S. Atty., Richard Woolf, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before, WISDOM, THORNBERRY and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The defendant, convicted of conspiracy to import cocaine,[1] importing cocaine,[2] and possessing cocaine with intent to distribute,[3] contends that the trial court erred in not suppressing incriminating statements she made to customs agents before she was informed of her *Miranda*[4] rights. We agree that her statements were inadmissible, and that their admission was not harmless error beyond a reasonable doubt; consequently, we reverse her conviction.

On February 19, 1977, two customs officers at Miami International Airport observed an airline stewardess, Mouthon, wearing oversized and ill-fitting shoes, similar to shoes that had, to their knowledge, been used previously to carry contraband. At their request, Mouthon accompanied the officers to the customs search room, where her shoes were inspected and found to contain cocaine. Mouthon informed the officers that she was supposed to deliver the shoes to another party. The officers accompanied Mouthon to the airline paging counter, where the stewardess gave the defendant's name and asked that she be paged. After being paged, the defendant appeared, went directly to Mouthon, and embraced her.

At that point, one of the customs officers displayed his badge to the defendant. At his request, she accompanied the officers to

---

1. 21 U.S.C. § 963.

2. 21 U.S.C. §§ 952(a) and 960(a)(1), and 18 U.S.C. § 2.

3. 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

4. *Miranda v. State of Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

the search room in the customs area one floor below. She was asked if she had money for Mouthon, and whether she was supposed to receive something from the stewardess. She answered both questions affirmatively. The defendant was then advised of her constitutional rights.

The defendant waived her right to a jury trial and was convicted based on stipulated facts to which she agreed only after a magistrate recommended that her motion to suppress be denied. At this stage, the motion to suppress was aimed at the contention that the defendant was illegally arrested, without probable cause, in the main terminal. The argument was made that, in consequence, the later interrogation was illegal and that *Miranda* warnings should have been given at the moment of initial contact with the defendant. When the magistrate's recommendation was presented to the trial judge, the facts were obscured in argument, and, in at least partial consequence, the experienced judge adopted the magistrate's recommendation. Now the spotlight is refocused and the defendant urges that she was in custody, within the meaning of *Miranda*, prior to the customs agents' questioning, whether or not she had previously been arrested.

■ Under *Miranda*, the prosecution may not use any statements stemming from custodial interrogation of a defendant "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination," 384 U.S. at 444, 86 S.Ct. at 1612. This court, as it has said

repeatedly, has adopted a case-by-case approach to determining when such custodial interrogation exists that *Miranda* safeguards are a predicate to the admission at trial of a defendant's in-custody statements. *Alberti v. Estelle*, 5 Cir. 1975, 524 F.2d 1265; *United States v. Carollo*, 5 Cir. 1975, 507 F.2d 50, *cert. denied*, 1975, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 105; *Brown v. Beto*, 5 Cir. 1972, 468 F.2d 1284. Because the focus of our inquiry in identifying "custodial interrogation" is whether the defendant was "taken into custody or otherwise deprived of his freedom of action in any significant way," *Miranda, supra*, 384 U.S. at 444, 86 S.Ct. at 1612, we have identified four factors as especially relevant to our determination: (1) the existence *vel non* of probable cause to arrest; (2) the subjective intent of the police; (3) the subjective belief of the defendant, and (4) the focus of the investigation. *Alberti, supra*, 524 F.2d at 1267; *Carollo, supra*, 507 F.2d at 52; *Brown, supra*, 468 F.2d at 1286. We are convinced, based on these factors, that the defendant was in custody for *Miranda* purposes by the time she reached the customs enclosure, accompanied by Mouthon and by the customs officers; therefore, no statements made by her after that time and before she was told of her constitutional rights should have been admitted.

■ This case is controlled by *Alberti v. Estelle, supra*.[5] Whether or not the fact that the defendant responded to the page and embraced Mouthon alone would have constituted probable cause for arrest,[6] the

---

**5.** In *Alberti*, a Houston narcotics officer tipped by a known reliable informant that Lawrence Ray Alberti could be found for a short time only in a particular apartment, and that he would have in his possession a large quantity of marihuana and LSD, went to the apartment and asked to speak with "Lawrence." Alberti identified himself and invited in the officer and two other detectives. Once inside, the officer spotted a shoebox containing plastic bags with a "greenish plant substance inside," 524 F.2d at 1266. Without giving any *Miranda* warnings, the officer stepped toward the box, opened a bag, and asked to whom it belonged. Alberti said it was his, and that no one else in the apartment was involved. This court held that, under the circumstances presented, Alberti

should have received the *Miranda* warnings prior to any questioning; his response to the pre-warning question should not have been admitted, and this initial illegal confession tainted, and would have rendered inadmissible, his statements after the warnings concerning the whereabouts of other narcotics. 524 F.2d at 1268.

**6.** Our disposition of this case obviates a determination as to whether the customs agents' initial contact with the defendant or their asking her to accompany them to the customs search area constituted an arrest. Counsel below failed to frame the *Miranda* issue precisely, challenging instead the alleged arrest as unlawful and arguing that defendant was not suffi-

agents' observations of the defendant clearly focused the investigation on her. Her subjective belief, to which she testified, that she was not free to leave the officers,[7] is buttressed by their request, whether an invitation or a demand, that she accompany them to a confined area some distance from their initial encounter. The officers' intent eventually to arrest her is readily inferrible from the circumstances. As in *Alberti*, the officers should have informed the defendant of her rights prior to any interrogation.

Consequently, her conviction is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

ciently apprised of her rights to assure a voluntary and knowing waiver. The issue on which we now base our decision was sufficiently suggested below to require it now to be considered, but, had it been raised directly, and the controlling authorities cited, the trial judge would have been furnished the assistance of counsel so indispensable to justice in an adversary system, and this appeal might, indeed, have been averted. In view of our disposition, we need not decide whether the judge below was correct in holding that she had not been arrested, or whether the magistrate was correct in finding that, had the officers intended to arrest her after her embracing Mouthon, probable cause would have justified the arrest.

7. At the defendant's hearing on a motion to suppress, the trial judge stated: "[The officers] said: Please come downstairs. She had two choices. She could have gone downstairs with them, or she could have bolted and dashed through the door." Record, Vol. III, p. 44.