UNITED STATES of America, Plaintiff,

v.

Sonia Yvelice BERAS, Defendant.

Criminal No. 95–326(DRD).

United States District Court,
D. Puerto Rico.

March 7, 1996.

David W. Roman, Guaynabo, PR, for defendant.

Joseph Frattallone–Marti, U.S. Attorney's Office, District of P.R., Criminal Division, Hato Rey, PR, for the U.S.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Defendant requests the Court to Suppress post arrest incriminating statements made to a customs agent in violation of her Fifth Amendment rights and in violation of requirements under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## I. FACTS

Sonia Yvelice Beras, the defendant, attempted to board American Airlines' flight 401 from San Juan to Santo Domingo on October 15, 1996 scheduled to depart around 8:20 P.M. She was met at the jet way by Senior Customs Agent Héctor Colón at around 8:10 P.M. Prior thereto through the PA system all passengers were advised of the standards of reporting currency in excess of $10,000.00. The customs agent was conducting routine checks pursuant to Customs Operation Buck Stop.[1]

The inspector asked the defendant whether she was carrying any money, she said she was carrying $538.00. She was then asked where she was traveling from to which she indicated that she came from St. Thomas. The agent became suspicious because she was wearing a heavy Jean jacket and alleg-

edly coming from a warm climate (St. Thomas) traveling to another warm climate (Dominican Republic) no heavy clothing was needed. The inspector then asked for her passport and found a boarding ticket from New York City to San Juan. The defendant thus had two boarding passes. The carry on luggage was then inspected and within a white blanket sheet were sweat socks full of bundles of currency in the ten and twenty-dollar denomination. The customs inspector testified that he understood at that moment that there was probably more than $10,-000.00 in the possession of the defendant. He advised the defendant to wait at the jetway while the inspection of other passengers continued. The operation lasted until around 8:20 P.M. Defendant was then escorted to the customs enclosure area.

Upon arrival at the enclosure area, about a five minute walk from the jetway, defendant was subject to a strip search by female customs agents. In the meantime, the count of the currency was being conducted. Pictures of the currency were taken. By 9:05 P.M. the entire procedure was over. Customs agent Colón called on Customs Special Agent Peña at around 9:00 P.M. Agent Peña arrived with agent Eduardo Pesquera at around 10:10 P.M. During all this time Sonia Yvelice Beras was not provided any Miranda warnings.[2] Predictably defendant claims that while at the customs enclosure area, before the arrival of special agent Peña, customs inspector Colón while interrogating her extracted incriminating statements. The government contends that the alleged tainted statement was not made to inspector Colón but latter to special agent Peña after the Miranda warnings were verbally provided followed by a written confirmation of the waiver.

## II. MIRANDA WARNINGS

■ *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires an

---

1. See *United States v. Gómez Londoño*, 553 F.2d 805 (2nd Cir.1977); *U.S. v. Berisha*, 925 F.2d 791 (5th Cir.1991).

2. Ex. "A" reflects that although she was detained at 8:10 P.M., at the primary area (jetway), defen-

dant was not provided any Miranda warnings until 10:35 P.M. on this evening notwithstanding that after 8:20 P.M. defendant was singled out, removed to a secondary area and strip searched.

investigating officer to provide a suspect with the following warnings (1) that he has a constitutional right to remain silent, (2) that anything he says can and will be used against him in court, (3) that the suspect has a right to confer with counsel before answering any questions and to have counsel present during the questioning, (4) and if indigent the suspect has a right to have appointed counsel present,[3] (5) should the suspect choose to answer the questions or make a statement and thus initially waive his rights, he may rescind the waiver at any time and terminate the interview by stating he wishes to remain silent or that he wishes to do so until counsel arrives.[4]

■ Miranda rights mature and hence attach when there has been a significant deprivation of the suspect's freedom. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); a "coercive setting" is not enough, a significant restraint of freedom of movement is required. *U.S. v. Jiménez*, 602 F.2d 139 (7th Cir.1979).

■ It is unquestionable that agents are not required to administer the Miranda warnings to everybody whom they question, *Miranda*, 384 U.S. at 477–478, 86 S.Ct. at 1629–30. Further, Miranda warnings do not have to be provided before routine questioning even after arrest if such questioning is limited to asking for needed information for processing. *U.S. v. Prewitt*, 553 F.2d 1082 (7th Cir.), cert. denied 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1979). Further, routine border stops and customs inspections do not amount to custodial interrogations. *U.S. v. Martínez*, 588 F.2d 495 (5th Cir.1979); *U.S. v. Smith*, 557 F.2d 1206 (5th Cir.1977), cert. denied 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). Moreover, Operation Buck Stop inquiries do not constitute custodial questioning and hence do not require Miranda warnings. *U.S. v. Gómez Londoño*, supra; *U.S. v. Berisha*, supra (Miranda warnings at primary area are not required).

However, when a suspect is removed out of the regular stream of activity and either questioned singly or searched Miranda warnings attach. *U.S. v. Del Soccorro Castro*, 573 F.2d 213 (5th Cir.1978); *U.S. v. McCain*, 556 F.2d 253 (5th Cir.1979).

■ Since custody for Miranda purposes involves the "deprivation of ... freedom of action in any significant way" *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, the Court must, in first instance, determine whether the defendant, Sonia Yvelice Beras was in fact "in custody." To determine if a person is "in custody" courts must examine "objective circumstances." *Stansbury v. California*, —— U.S. ——, ——, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994). The Courts are further ordered to use the perspective of a "reasonable person" in the suspect's position. *Berkemer v. McCarty*, 468 U.S. 420, 422, 104 S.Ct. 3138, 3141, 82 L.Ed.2d 317 (1984); *U.S. v. Masse*, 816 F.2d 805, 809–810 (1st Cir. 1987). Finally, the Court is to consider the "totality of the circumstances" involved in order to arrive at the final determination. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam).

■ The Court considers that defendant was in fact "in custody" due to the following "objective circumstances" under the perspective of a "reasonable person."

1. The defendant was moved from the jetway to the enclosure of the customs area at around 8:20 P.M.[5]

2. Defendant was stripped and searched by female customs inspectors upon arrival at the customs enclosure area.

3. The money was counted and in excess of $38,000.00 was found by 9:05 P.M.

4. Special Agent Peña was called by customs agent Colón to his residence and advised to report to airport customs facilities at around 9:05 P.M.

---

**3.** *Miranda v. Arizona*, 384 U.S. at 462–473, 86 S.Ct. at 1621–27.

**4.** *Miranda v. Arizona*, 384 U.S. at 473–474, 86 S.Ct. at 1627–28.

**5.** The questioning was non "on-the-scene questioning". *U.S. v. Adegbite*, 846 F.2d 834, 838–839 (2nd Cir.1988); *U.S. v. Klein*, 13 F.3d 1182, 1184 (8th Cir.) cert. denied —— U.S. ——, 114 S.Ct. 2722, 129 L.Ed.2d 846 (1994); *U.S. v. Booth*, 669 F.2d 1231, 1238–1239 (9th Cir.1981).

5. Defendant was not advised that she was free to leave and in fact was not free to leave the Customs enclosure area (8:20 P.M.).

6. Facts 1–5 occurred between 8:10 P.M. and 9:05 P.M.

The Court, therefore, is of the opinion that by 9:05 P.M. the "totality of circumstances" from the perspective of a "reasonable person" leads to the inescapable conclusion that defendant was "in custody." Defendant was singled out, removed from the stream of activity, and searched. *U.S. v. Del Soccorro Castro,* supra; *U.S. v. McCain,* supra. The facts in this case point clearly toward more than a "stop at the jetway." *U.S. v. Berisha,* supra (warnings at primary area not required). Hence, after 9:05 P.M. on October 15, 1995, defendant was entitled and should have been received Miranda warnings. She was not provided the warnings until 10:35 P.M., Ex. A.

### III. THE CREDIBILITY FINDING

█ The defendant claims that while in custody at the customs enclosure area, customs agent Colón extracted from her an incriminating statement as to the fact that while in New York City she met a friend called "Luis" at 147th and Broadway who offered her $2,000.00 to carry the money from N.Y.C. to Santo Domingo. Special Agent Peña contends that the statement was made to him after the warnings were provided.

The Court concludes that the statement was made to Special Agent Peña after defendant received the Miranda warnings and that the "totality of circumstances" surrounding agent's Peña interrogation indicate that the waiver was a knowing and voluntary waiver. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986).

█ The standard of proof requires the Court to decide "... whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence." *U.S. v. Saccoccia,* 58 F.3d 754, 781 (1st Cir.1995) citing *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 1501–1502, 99 L.Ed.2d

771 (1988). The credibility issues in a criminal suppression hearing belong to the trial court. *U.S. v. Portalla,* 985 F.2d 621, 622 (1st Cir.1993).

The Court notes that defendant has not been truthful in this case. She failed to advise the U.S. Customs Agent that she was carrying in excess of $10,000.00 and in fact stated that she was carrying only $538.00. Defendant further did not inform the customs agent that she traveled from N.Y.C. and in fact advised that she was traveling from St. Thomas to Puerto Rico. Defendant further hid the money inside sweat socks camouflaged by a bed sheet. The Defendant further claims that the document Ex "A" was signed by agent Colón while the same is signed by agent Peña. Further "the variations in demeanor and tone of voice" of the defendant when cross examined and when questioned by the Court leads the Court not to grant her credibility. *United States v. Carty,* 993 F.2d 1005, 1008 (1st Cir.1993).

Although the testimony of agent Pesquera cast a doubt relating to the full compliance with Miranda warnings verbally provided to the defendant by special agent Peña[6], certainly the written warnings contained in Ex "A" signed by Defendant fully comply with the Miranda warnings set forth at the outset of this Opinion and Order.

The "totality of circumstances" required to be examined by the case of *Moran* supra, 475 U.S. at 421, 106 S.Ct. at 1140–41, indicate that the Defendant signed an intelligent, voluntary, and knowing waiver to her Miranda rights. Defendant is obviously overage, she understands the Spanish language, signed the waiver in Spanish, received the waiver verbally in Spanish, and was not observed by any of the witnesses in a physical or mental stressful or coerced condition.

The Motion to Suppress is therefore **DENIED.**

IT IS SO ORDERED.

---

6. Agent Pesquera testified that the warning as to the termination of the interrogation was not made to the defendant. Said warning is present in the written acknowledgment signed by the defendant.