# JANUARY 10, 1940

W. M. HAMILTON v. THE STATE.

No. 20726. Delivered January 10, 1940.

The opinion states the case.

*Robert D. Peterson,* of Marlin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder; the punishment assessed is confinement in the state penitentiary for a term of 40 years.

The record discloses that the homicide occurred in the town of Rosebud on the night of January 16, 1939. The deceased, who was a small negro woman, owned and conducted a restaurant and beer tavern and had appellant employed to assist her. She and appellant lived in the back end of the tavern. About midnight or a little later on the night in question, a neighbor who lived about 75 yards from the tavern, heard someone crying and recognized the voice as that of appellant. The neighbor immediately dressed and went to the tavern, where appellant told him that the deceased was dead; that he had accidently shot her under the heart. The witness entered the room, looked at the deceased, saw that she was dead, and then asked appellant how he could have done it. Appellant replied that he would not have done it for anything. He then reached under the counter, brought up a pistol and said: "I killed her with this old rusty gun here. I did not know it would

shoot. She was coming on me with an ice pick and I threw the gun on her to bluff her and the gun went off and shot her accidently." About this time Jack Shaw came in, looked at the deceased and remarked: "She is dead; you had better protect yourself. You give up and not hide or anything like that." The appellant and Shaw then left to make a report of the killing and surrender to the officers. They first went to the home of the constable, but being unable to awaken him, they went to the home of a justice of the peace and reported the occurrence to him. The justice of the peace got in touch with constable and they all returned to the scene of the homicide. The State also proved that appellant and the deceased had theretofore had some quarrels and he had threatened to kill her if he caught her going with other men. Appellant did not testify or offer any affirmative defense.

By bill of exception number one, appellant complains of the action of the trial court in overruling his motion to quash the indictment on the ground of discrimination against the negro race of which he was a member. He alleged that no negro had ever been appointed by the judge of said court as a jury commissioner; nor had any negro ever been selected as a grand or petit juror in the past 20 or 30 years. The proof in support of these allegations fails to show any intentional discrimination on the part of the jury commissioners or the judge who appointed them. There was some testimony that no negro had ever been appointed as a jury commissioner and there was also some testimony that no negro had served as a member of the grand or petit jury for a number of years. However there was testimony to the contrary. Judge Dodson, a former judge of said court (who was succeeded by the present encumbent) testified that he knew quite a number of negroes who had been drawn for jury service. He remembered that in the case of the State v. Walter Freeney, charged with murder, that several negroes served on the panel and assessed the death penalty against the accused. Judge H. C. Carter testified that he remembered seeing negroes on the grand and petit juries not much over a year past. Thus it will be seen that an issue of fact was raised which the court decided adversely to appellant. This court would not be justified, under these circumstances, in disturbing his finding unless it was made to appear that he abused his discretion in the matter. See Sec. 586, p, 300, Branch's Ann. P. C. and authorities cited. Lugo v. State, 124 S. W. (2d) 344.

By bills of exception numbers four and five appellant complains of the action of the trial court in permitting the con-

stable to whom he surrendered, and the city marshal, to testify that he took appellant to the scene of the homicide where appellant made an oral statement to him with reference to how the killing occurred. The bills further show that after appellant had been taken to jail and confined, the constable accompanied by the city marshal, went to the jail, took appellant back to the scene of the homicide, and again had him make an oral statement with reference to the homicide. The constable and city marshal related to the jury what appellant said. Appellant objected to the testimony of each of these officers as to what he told them (or either of them) on the ground that he was under arrest at the time and that such statements were not made in conformity with the requirements of the law; that said statements were not res gestae and did not lead to the discovery of the instrument with which the offense was committed. The court overruled the objections and admitted said statments on the theory that they were a part of the res gestate, and on the further ground that the ice pick was found as a result of the statements. The ice pick was not the instrument used in the commission of the offense. The pistol was, but it had already been shown to Bob Bradley (to whom appellant had made a statement relative to the killing.)

If the statements made by the appellant to the officers were a part of the res gestae, then it was admissible, notwithstanding the fact that appellant had not received the statutory warning. See Powers v. State, 23 Tex. App. Rep., 42, 5 S. W., 153, Calloway v. State, 92 Tex. Cr. Rep., 506, 244 S. W., 549. We do not think that the testimony given by the officers comes within the scope of the rule of res gestae. The officers did not themselves know how long the alleged offense had been committed before appellant surrendered. Bradley, (who was the first person to arrive on the scene) testified that it was between an hour and an hour and a half before the officers arrived. Appellant made a statement to Bradley within a few minutes after the occurrence.

In 18 Texas Jurisprudence, Sec. 181, we find the rule stated as follows: "To be admissible as part of the res gestae the acts or declarations of the parties must be substantially contemporaneous with and grow out of the main fact, so as to be spontaneous and not in effect a mere narrative of a past occurrence, and they must tend to illustrate, explain or unfold the character or significance of the main fact. The acts or declarations must also stand in immediate causal relation to the principal fact and become part either of the action im-

mediately producing it or the action which it immediately produces."

One of the requisites of a res gestae statement is spontaneity. In other words, the statement must be the natural and spontaneous outgrowth of the main fact, and must exclude the idea of premeditation. The statement must be of such a character as to justify the conclusion that it was the event speaking through the party, and not the party talking about some event. The rule is further stated in Vol. 18 Tex. Juris, Sec. 183 as follows: "While it has been said that acts or declarations to be admissible under this doctrine must be contemporaneous with the main transaction, it is settled that they need not be precisely concurrent in point of time if they were generated by an excited feeling which extended without break or let-down from the moment of the event they illustrate." See also 18 Tex. Juris., p. 312, Sec. 193 McCormick & Ray, Texas Law of Evidence, Secs. 431 & 440; Deneaner v. State, 58 Tex. Crim. Rep., 624; Houseton v. State, 83 Tex. Crim. Rep., 453, 204 S. W., 1007; Butler v. State, 131 Crim. Rep., 543, Lockhart v. State, 111 S. W., 1024.

The test then seems to be—were the declarations the facts speaking through the party or the party's talk about the facts? Instinctiveness is a requisite, and unless this appears the declaration is not admissible. The statements made by the appellant to the city marshal and the constable not being res gestae of the offense, and not having been taken in accordance with the statutory method for confessions were not admissible in evidence against appellant over proper objection. These statements which appellant is alleged to have made to the officers, as related by them, varied in some material respects from those he made to Bradley immediately after the homicide. The State introduced these officers as witnesses, who related to the jury appellant's statement to them; then they showed by the same officers that said statement could not be true; that it was false. This was harmful since it tended to show that the killing was probably the result of malice instead of accidental as appellant claimed. See Bell v. State, 124 Tex. Crim. Rep., 676, 65 S. W. (2d), 303 and the many authorities there cited.

Appellant also complains of the court's refusal to instruct the jury on the law of circumstantial evidence. We do not believe that such an instruction was required under the facts of this case. Appellant admitted to Bradley that he shot the deceased with the rusty pistol. Hence the State had direct testimony as to who killed the deceased. Whether the killing was

deliberately done or was an accident might depend upon circumstances, but this would not require an instruction to the jury relative to the law of circumstantial evidence. See Barnes v. State, 53 Tex. Crim. Rep., 628, Russel v. State, 38 Tex. Crim. Rep., 590, 44 S. W., 159, Puryear v. State, 28 Tex. Crim. App., 73.

The other matters complained of by appellant need not be discussed since they will probably not arise again on another trial.

For the error discussed, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.