Fred K. NEWBERRY, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 51860.

Court of Criminal Appeals of Texas.

June 14, 1977.

Rehearing Denied July 6, 1977.

Tom S. McCorkle, Dallas, for appellant.

Henry Wade, Dist. Atty., Donald H. Flanary, Jr., John R. Roach and Jan E. Potts, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of the misdemeanor offense of driving while intoxicated. Punishment was assessed at a fine of fifty dollars and three days in county jail, probated.

In his first five grounds of error, appellant complains of the introduction in evidence, over objection, of oral statements made by him in response to questions by the arresting officer while he was allegedly under arrest. He contends that the evidence was admitted in violation of his constitutional right to remain silent.

In his sixth ground, appellant makes the same complaint concerning the admission over objection of additional oral statements made by him in response to questions by the officer who, after his arrest, was taking him to the police station.

Sergeant Doyle Bice of the Dallas Police Department testified that shortly after midnight February 19, 1974, while he was travelling in a police car north on Lemmon Avenue in Dallas, he noticed appellant's car going south without lights. He saw appellant make an illegal right hand turn off of Lemmon Avenue onto Douglas Street, a one-way street for east bound traffic. Appellant then drove his car a short distance in a westerly direction on Douglas. Bice turned in behind appellant's car, and turned on his red lights, stopping the other car approximately two car lengths from the next intersection. Bice then got out of the police car, went to the other car, and asked appellant for his driver's license, and asked him to get out of his car. Appellant had difficulty in getting out of the car, and also in finding his license. Bice told appellant that the reason he stopped him was that he "didn't have his lights on . . . and he turned the wrong way on a one-way street." In the meantime, Officer George arrived on the scene, got out of his police car "and came up to where we were standing there talking."

At this stage of Bice's testimony on direct examination, the following proceedings occurred:

"Q Did you have occasion out there to ask the Defendant if he had been drinking?

"A Yes, sir, I did.

"Q Did he reply to that question?

"MR. McCORKLE [Defense Counsel]: Your Honor, I object at this time on the grounds that the Defendant was under arrest, and I would like to have a hearing outside the presence of the jury to take up this matter of law.

"THE COURT: Well, I overrule the request to remove the jury. I sustain the objection unless the State establishes the minute and location of where you are asking him about so I can rule on it.

"MR. McCORKLE: Your Honor, may we have this done outside the presence of the jury?

"THE COURT: No, you may not.

"MR. McCORKLE: Note our exception.

"THE COURT: He cannot answer what statement was made until I establish when it was made and then I am going to rule.

"MR. ROACH CONTINUING:

"Q Sergeant Bice, out there at the scene where you stopped the Defendant Fred Newberry, did you have an occasion to ask him if he had been drinking?

"THE COURT: Wait a minute, don't ask him that until you establish how many minutes it was that you are asking that this took place after that time when he first stopped him and that location where he stopped him so I can rule on it.

"MR. ROACH CONTINUING:

"Q Sergeant Bice, did you have any conversation with the Defendant Fred Newberry out there at the scene where you stopped him?

"A Yes, I did.

"Q How soon after you stopped him did you begin having this conversation with him?

"A It was a matter of seconds and I started talking to him first.

"Q And as a part of that conversation did you ask him if he had been drinking?

"A Yes.

"Q And at that time in response to that question did he reply to that?

"MR. McCORKLE: Your Honor, that is what I object to without a hearing out of the presence of the jury.

"THE COURT: I overrule the objection, you may answer the question.

"MR. McCORKLE: Your Honor, I would like to submit that we have the right to have a hearing outside the presence of the jury under Article 38.22 under the rules of Texas Criminal Procedure.

"THE COURT: I overrule that objection and state that you do not, it is a matter for the Court to determine whether it is a res gestae statement or not. The Court rules that it is res gestae, and therefore is not covered by the statutes of Texas.

"MR. McCORKLE: Your Honor, I would like to submit that it is not res gestae.

"THE COURT: I understand that and you are arguing with the Court, and I don't want to have any argument about it, I have ruled and it is in the record. Now, be seated, please.

"MR. McCORKLE: Your Honor, that is why I wanted to take it up out of the presence of the jury. Could we have a conference in Chambers?

"THE COURT: No, sir.

"MR. McCORKLE: Note our exception for the record, please.

"THE COURT: Read the question back and answer the question.

"(The question was read to the witness.)

"MR. McCORKLE: Your Honor, just for the record I would like to restate my grounds.

"THE COURT: You don't have to restate your grounds, that is exactly the reason I had the Court Reporter read it back. If he had asked the question again, then you would have had to restate them. The Court Reporter has read it back and I have already ruled, we have went over it and I don't want to have any more objection on that point. Answer that question.

"THE WITNESS: I am not sure—

"THE COURT: Read the question back to him one more time.

"(The question was read to the witness.)

"THE WITNESS: Yes, he did.

"MR. ROACH CONTINUING:

"Q  And what did he say in response to that question?

"A  He said, 'He had a couple of drinks'.

"Q  At the same time did you have occasion to ask him, 'What he had been drinking'?

"A  Yes.

"MR. McCORKLE: I object again on the same grounds, a violation of the *Miranda* ruling.

"THE COURT: And I overrule those objections, you may answer the questions.

"MR. ROACH CONTINUING:

"Q  Did he reply to your question?

"A  Yes, he did.

"Q  What was his answer?

"A  'Scotch'.

"Q  Did you have an occasion that same time to ask him, 'How much he had been drinking'?

"MR. McCORKLE: I object again, Your Honor, on the same grounds.

"THE COURT: Overruled, answer the question.

"THE WITNESS: Yes, I did.

"MR. ROACH CONTINUING:

"Q  What was his reply to that question?

"A  How much he had been drinking?

"Q  Yes.

"A  He said, 'It was two drinks'.

"Q  Did you have an occasion at that same time as a part of that same conversation there at the scene to ask him, 'What he had been doing prior to the time you stopped him'?

"A  Yes, I did.

"Q  And did he reply to that question?

"A  Yes.

"MR. McCORKLE: Objection, Your Honor, same grounds, a violation of *Miranda*.

"THE COURT: Overruled, answer it.

"THE WITNESS: Yes, he did, and he stated he had been, 'Honky-tonking'.

"MR. ROACH CONTINUING:

"Q Are you certain those are the words he used?

"A Yes.

"Q Did you have an occasion to ask him, 'Where he had been honky-tonking'?

"A Yes, sir.

"Q Did he reply to that question?

"MR. McCORKLE: Objection, Your Honor, same grounds.

"THE COURT: Overruled, if it is a part of the same conversation right there within a few minutes after the arrest at the scene of the arrest.

"THE WITNESS: All connected.

"THE COURT: You may answer it.

"THE WITNESS: He stated that he had been, 'To the Lemon Twist Club'.

\* \* \* \* \* \*

"Q All right, sir. Did you have an occasion then to tell the Defendant he was under arrest?

"A Yes, I did.

"Q Did you tell him what for?

"A Yes, sir.

"Q And what or how did you tell him?

"A I told him—well, I had already explained to him why I stopped him. I also told him or I formerly told him that he was under arrest for those two charges, and that he was also under arrest for driving while intoxicated."

Officer Bice testified additionally:

"Q Now, had Mr. Newberry handed you his driver's license and then taken it back out of your hand and got into his car as though to leave, would you have allowed him to leave?

"A No, sir, not at that time.

"Q Okay. He was in your custody at that time, is that correct?

"A Right.

\* \* \* \* \* \*

"Q And at the time he handed you his driver's license, you would not have let him leave, is that correct?

"A Well, I wouldn't have let him leave.

"Q He wasn't free to go?

"A From the time I got him stopped I wouldn't have let him leave."

Bice testified that after the above conversation appellant was handcuffed and placed in Officer George's car. During George's direct examination as a State's witness, the following occurred:

"Q Did you have an occasion to talk to the Defendant at the scene?

"A Yes, I did.

"Q Still in your squad car?

"A Yes, it was.

"Q Prior to the time you left?

"A Yes, it was.

\* \* \* \* \* \*

"Q Did the Defendant at any time ever tell you out there at the scene where he had been prior to the time he was stopped?

"A Prior to the time he was stopped by Sergeant Bice?

"Q Yes.

"A Yes, he did.

"Q What did he tell you?

"MR. McCORKLE: Objection, Your Honor, on the same grounds and I would request a hearing outside the presence of the jury.

"THE COURT: I Overrule your objection and I deny your request. Answer it.

"THE WITNESS: He stated he had been having marital problems and that he decided to, 'Tie one on', and that he had, 'Been out honky-tonking at the Lemon Twist Club'."

In *Ancira v. State*, 516 S.W.2d 924, in reversing the judgment due to the failure of the trial court to suppress evidence acquired as the result of custodial interrogation of defendant without *Miranda* warnings being given, this Court said:

"In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court held that evidence obtained as the result of a custodial interrogation was inadmissible unless the State proved that proper warnings were given to the defendant and an affirmative waiver of rights was shown. See Art. 38.22, V.A.C.C.P. Custodial interrogation was defined in *Miranda* as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'

\* \* \* \* \* \*

"It is not necessary that an accused be under formal arrest prior to the interrogation for *Miranda* rights to arise. *Windsor v. United States,* 389 F.2d 530 (5th Cir. 1968). In *Windsor,* it was held that *Miranda* rights had arisen, and the Court said, 'The Government agents' testimony that Windsor was not a suspect and not under arrest when questioned in his motel room is belied by the facts of the case. . . . Windsor was definitely the central figure in their investigation . . . .'

"In *Brown v. State,* supra,[1] and *Jones v. State,* Tex.Cr.App., 442 S.W.2d 698, where this Court held that *Miranda* rights had not arisen, it was noted that the investigation had not begun to focus on the accused. In *United States v. Phelps,* 443 F.2d 246 (5th Cir., 1971), the significance of whether or not the focus of the investigation had finally centered on the defendant was discussed:

" '. . . [W]e have noted several significant factors which should be considered in determining whether or not a defendant is in custody. For example, probable cause to arrest, subjective intent of the police, focus of the investigation and subjective belief of the defendant have all been deemed relevant. *United States v. Montos,* supra [421 F.2d 215, 5th

Cir. 1970]. However, throughout the decisions one of these factors has consistently impressed our court: whether or not the focus of the investigation has finally centered on the defendant. In *Miranda* itself the Supreme Court explained that "in custody" was a shorthand phrase for what *Escobedo v. Illinois,* 1964, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977, described as an investigation which has focused on an accused. . . .' " See, also, *Alberti v. Estelle,* 524 F.2d 1265 (5th Cir. 1975).

▇ In the instant case there clearly was probable cause to arrest appellant for the traffic violations. Further, Officer Bice testified that prior to the conversation he had formed the opinion from the manner in which appellant was driving and from appellant's difficulty in getting from his car and in finding his driver's license, and from the strong odor of alcohol in the car and emanating from appellant that he had a case of an intoxicated driver. Bice testified that he considered appellant to be in custody, and would not have let him leave. Clearly, prior to and during the above conversation, the investigation, under the circumstances shown, had begun to focus upon the appellant, and he had been placed in restraint. See *Ancira,* supra, and cases there cited. No *Miranda* warnings were given appellant prior to his being questioned by Officer Bice. Clearly the answers of appellant to Bice's questions were inculpatory, and tended to incriminate him.

The circumstances here presented distinguish this case from a general investigation into an unsolved crime (see *Brown v. State,* Tex.Cr.App., 475 S.W.2d 938, and cases there cited) as well as cases upholding the admissibility of statements made during a general on-the-scene investigatory process. See dissenting opinion of Presiding Judge Onion in *Harper v. State,* Tex.Cr.App., 533 S.W.2d 776,[2] and cases there cited. Cf.

---

1. 475 S.W.2d 938.

2. In *Harper,* this Court unanimously held that the admission in evidence of a statement made

by the defendant to the officer who had stopped him under circumstances similar to the instant case violated defendant's Fifth and Fourteenth Constitutional rights, but a majori-

*Graham v. State,* Tex.Cr.App., 486 S.W.2d 92.

We conclude that the admission over objection of the evidence of Bice's questions to appellant and appellant's inculpatory answers, under the circumstances, violated the requirements of *Miranda,* supra, and violated appellant's constitutional rights. See *Ancira v. State,* supra, and authorities there cited.

Furthermore, the trial court erred in holding that the conversation between Officer Bice and appellant was admissible as res gestae. We quote as follows from *Smith v. State,* Tex.Cr.App., 507 S.W.2d 779, 781:

> "Additionally, in response to the dissenting opinions, we note that, even if *Miranda* were not at issue, the challenged statement was not res gestae of the arrest. The closeness in time to an arrest is not alone sufficient to render a statement res gestae thereof. If this were so, there would be no need to give *Miranda* warnings until booking at the station house, and thorough interrogation immediately upon arrest without warnings would be the most likely occasion to obtain admissable oral statements. But answers to interrogation following upon the heels of an arrest are not sufficient to constitute res gestae. 'The statement must be the natural and spontaneous outgrowth of the main fact,' *Hamilton v. State,* 138 Tex.Cr.R. 205, 135 S.W.2d 476. But in this case the statement simply was not spontaneous, nor even an unresponsive (sic) answer to a nonincriminatory type of question."

The evidence of the conversation in question while appellant was in restraint was not admissible as res gestae either of the offense or of the arrest.

The State relied for conviction upon the testimony of Officers Bice and George. No other State witnesses testified. Appellant testified, admitting that during the

evening preceding his arrest he had two weak mixed drinks, but denied that he was intoxicated, and also denied making the remarks attributed to him by the officers. We do not find that the inadmissible evidence hereinabove set forth was harmless beyond a reasonable doubt.

As to the testimony of the conversation between Officer George and appellant, the record reflects that it was made while appellant was handcuffed in George's car.

The State contends that error, if any, was not preserved because of the generality of the objection: "Objection, Your Honor, on the same grounds . . ." Clearly, in the context made, this referred back to appellant's objections to the admission of the conversation between appellant and Officer Bice, and was sufficient, under the circumstances presented, to preserve his objection that appellant was under arrest at the time the conversation occurred.

The court reversibly erred in admitting the above testimony in evidence.

It is not necessary that we determine other contentions of error raised in appellant's brief. However, we find that the trial court should have granted appellant's repeated requests that a hearing be had in the absence of the jury to determine the admissibility of the statements of appellant. See Art. 38.22, Sec. 2, V.A.C.C.P.; *Reed v. State,* Tex.Cr.App., 518 S.W.2d 817.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.

DOUGLAS, Judge, dissenting.

The majority reverses the conviction for the misdemeanor offense of driving while intoxicated because the trial court admitted into evidence certain statements he made following his arrest. The trial court admitted the statements as res gestae of the arrest.

ty held its admission to have been harmless error. In a concurring *opinion*, Judge Roberts and Judge Odom based their finding of harmless error on the statement not being inculpato-

ry. Presiding Judge Onion agreed that error was committed, and dissented to the finding that the error was harmless.

In determining whether statements are admissible as res gestae, each case must be considered on its own merits. *Harryman v. State,* 522 S.W.2d 512 (Tex.Cr.App.1975); *Patterson v. State,* 458 S.W.2d 658 (Tex.Cr. App.1970).

In *Jones v. State,* 458 S.W.2d 654 (Tex.Cr. App.1970), this Court, in part, held:

"If a statement is admissible as res gestae the fact that it is made in response to an inquiry, or while under arrest does not render the testimony inadmissible. *Spann,* supra [*Spann v. State,* Tex.Cr. App., 448 S.W.2d 128]; *Fowler v. State,* 162 Tex.Cr.R. 513, 287 S.W.2d 665; *Heath v. State,* Tex.Cr.App., 375 S.W.2d 909."

This Court has held innumerable times that statements which are part of the res gestae are admissible notwithstanding the fact that they may not be admissible as confessions or admissions, for the rule of res gestae is independent of, superior to, and cannot be limited by the rules relating to confessions or admissions. *Miles v. State,* 488 S.W.2d 790 (Tex.Cr.App.1973); *Jones v. State,* supra.

The evidence before us shows that shortly after midnight on February 19, 1974, Sergeant Doyle Bice of the Dallas Police Department observed appellant driving his automobile southbound on Lemmon Avenue in Dallas without lights. He saw appellant make an illegal right-hand turn to the west off of Lemmon Avenue onto Douglas Street, a one-way street for eastbound traffic. Bice stopped him only a couple of car lengths short of the next intersection. Bice got out of his patrol car and approached appellant who rolled down his window. Bice asked him for his driver's license. He seemed to have trouble finding his license so Bice asked him to step outside the car. When he seemed to have difficulty getting out, Bice held the door open for him. Once out of the vehicle Newberry was leaning against the car; he found his driver's license in his billfold. Bice assisted him by shining a flashlight on the billfold so he could see. Bice stated that he smelled a strong smell of alcoholic beverages both when Newberry was in the car and after he

was standing outside. When Bice told him he had stopped him because he had been driving without lights and had turned the wrong way on a one-way street, Newberry responded: "I didn't know," or "I don't know," or something to that effect. His speech was slurred and he appeared to be confused. Over objection, Bice was permitted to testify that in response to his inquiry of Newberry if he had been drinking, he replied: "He had a couple of drinks . . Scotch", and he insisted that he had had only two drinks. Also over objection, Bice stated that appellant told him that prior to the time he was stopped he had been "honky-tonking" at the Lemon Twist Club. The statements were made within seconds after he stopped appellant. During the entire conversation, appellant's speech was slurred, he seemed confused and unable to understand Bice's questions. Bice arrested him for driving while intoxicated and the two traffic offenses.

Officer George who came on the scene while Bice was talking to Newberry also related that appellant's speech was slurred and he appeared to be confused. He testified that he and Bice assisted appellant to his patrol car and that appellant swayed when he walked. Once in the patrol car and while waiting the arrival of another officer to drive appellant's car, George detected a moderate smell of alcoholic beverage about Newberry. He further stated that Newberry told him he was having marital problems and had decided to "tie one on," so he had "been out honky-tonking at the Lemon Twist Club."

The court ruled correctly. The statements made by appellant were res gestae of both the offense and of the arrest, hence a warning in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 38.22, V.A.C.C.P., was not required. *Goodney v. State,* 501 S.W.2d 311 (Tex.Cr.App.1973). See also *Parsley v. State,* 453 S.W.2d 475 (Tex.Cr. App.1970).

Even if the testimony could not be considered res gestae, it has long been the rule that if the same evidence is admitted else-

where in the trial without objection, then any error in its admission is waived. *Watson v. State,* 532 S.W.2d 619 (Tex.Cr.App. 1976); *Davis v. State,* 516 S.W.2d 157 (Tex. Cr.App.1974).

The evidence presented by the appellant was his own testimony. He admitted that on the evening in question he was involved in marital problems and that he had in fact been to the Lemon Twist Club where he had two drinks. He stated that before going to the Lemon Twist Club he had dinner at the Sailmaker Restaurant having only a glass of wine with his meal. Before leaving the Sailmaker he stopped in the bar to visit friends but did not have a drink with them.

He further stated that shortly after he turned onto Douglas he saw that he was going the wrong way and was pulling over to turn around when Bice came up behind him. Newberry then said that he got out of his car and walked to the rear where he met Bice and asked him to shine his flashlight on his billfold so he could see to find his driver's license in reply to Bice's request. He testified that "Officer George walked up and said, 'Book him. He's a DWI.'" Newberry denied having any further conversation with Bice after George walked up. He related that he then got into George's patrol car without assistance. Once in the patrol car he said that he struck up a general conversation with George and asked him ". . . how he liked being on the police force and how long he had been there, if he was married. And he asked me if I was married." Newberry said that he replied, "Yes, I'm married. But I'm in the process of a divorce." He specifically denied telling George that he was ". . . despondent over marital problems and were going to tie one on." Although Bice had testified that he had gone down to the station to book appellant, Newberry testified that he never saw Bice again after they left the scene of his arrest and that he was able to walk the entire time without assistance or swaying.

Appellant testified to basically the same statements as the officers were allowed to testify that he had made. The error, if any,

in admitting the statements was rendered harmless. *Davis v. State,* 516 S.W.2d 157 (Tex.Cr.App.1974); see also *Parsley v. State,* supra, (concurring opinion by Presiding Judge Onion).

No reversible error having been shown, the judgment should be affirmed.