Jessie Lee WILLIAMS, Appellant,

v.

The STATE of Texas, State.

No. 2-81-271-CR.

Court of Appeals of Texas, Fort Worth.

Dec. 30, 1982.

**892**

Crampton, Crampton & Estrada, P.C. and Robert G. Estrada, Wichita Falls, for appellant.

Timothy D. Eyssen, Dist. Atty., and Barry L. Macha, Asst. Dist. Atty., Wichita Falls, for appellee.

Before SPURLOCK, HUGHES and HOLMAN, JJ.

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)

## OPINION

SPURLOCK, Justice.

Appellant, Jessie Lee Williams, was convicted by a jury of the offense of voluntary manslaughter (V.T.C.A. Penal Code, § 19.-04) after a plea of not guilty to the offense of murder. V.T.C.A. Penal Code, § 19.02. The jury assessed punishment at thirteen (13) years imprisonment.

We reverse and remand for new trial.

Ms. Williams' first ground of error urges that the trial court erred in allowing Pat Morrow, a jailmate of Williams, to testify concerning oral statements made to Morrow by Williams while both were in jail, without a *Jackson v. Denno*[1] type hearing, outside the presence of the jury, to determine the voluntariness of the statement. Her second ground of error contends that the statement made to Morrow was inadmissible as evidence, and that it was therefore error as a matter of law to admit Morrow's testimony concerning the oral statement by Williams and improper for the State to cross-examine Williams as to the theory contained therein; namely, that Williams had the help of two others in killing the victim.

The sufficiency of the evidence has not been challenged. However, a factual summary is necessary to clarify the issues.

On the night of August 31, 1980, two children, Wenda Perkins, a cousin of appellant, Jessie Lee Williams, and Mahalia Williams, a sister of appellant Williams, were playing outside a house located next door to the residence of Jessie Lee Williams, and her alleged victim, S.P. Runnels. These children heard a gunshot originating from Williams' and Runnels' residence. They looked towards this residence and saw Williams and Ella Mae Washington run from the house. Wenda Perkins heard Washington tell Williams to throw Washington "the gun". Both children saw Williams throw some object to Washington. Williams and Washington then "split up"; Williams entered a pick up truck parked at the end of the block, and both women left the scene. Wenda Perkins went into the resi-

dence, and found Runnels lying face down and bleeding on the floor. Runnels told Perkins that Jessie Lee Williams had shot him. S.P. Runnels died at the scene of a gunshot wound to his back. A pocket knife was found open in Runnels' hand.

At the guilt stage of the trial, Williams testified on direct examination that she shot S.P. Runnels in self defense. She testified that Runnels, who seemed very angry, perhaps due to his irritation over a prior incident involving Williams' conduct, had slapped Williams' 18 month old daughter, whereupon Williams ran to her daughter's aid. Williams further testified that Runnels then hit Williams in the face and came at Williams with a knife, causing Williams to fear for her life. Williams said that she then shot Runnels with a handgun she saw lying on top of a piece of furniture in the living room. She further testified that she was sorry that Runnels was dead. On cross-examination, the State asked if Washington or Lloyd Williams had planned to aid Jessie Lee Williams "in getting Runnels out of the house." Defense counsel then questioned the State's good faith in that line of questioning.

In response, the State offered the impeachment testimony of rebuttal witness, Pat Morrow, who had been a jail or cellmate of Jessie Lee Williams shortly after Williams' arrest. Immediately upon the State's question of this witness, which asked what Jessie Lee Williams had told Morrow about Williams' case, defense counsel asked to "take up a matter outside the presence of the jury." The jury was removed and the actual request to the court was recited into the record (after a conference at the bench) as follows:

DEFENSE COUNSEL: At this time I would like to take up an issue outside of the presence of the jury and make a proffer of the question as to whether or not this witness was an agent of the State, and this witness having agreed to testify for the State whether or not she gave any warning to this defendant she was lawfully representing the State of Texas, and whether or not the defendant

was warned of her rights assuming there is an agency relationship.

THE COURT: The request is denied.

Morrow was then allowed to testify concerning oral statements made to Morrow by Williams while both were incarcerated together. Morrow testified that Williams had first related to Morrow, and to other (unidentified) cellmates, an account of the shooting of Runnels. We note that this account is substantially the same account as that which Williams had testified to at trial, and that this account formed the basis of her self defense theory. Morrow testified that Williams told this story several more times in Morrow's presence. At some point, several weeks later, a new inmate, unknown to Morrow, and apparently acquainted with Williams, talked with Williams in Morrow's presence. This new inmate, who stayed in jail only a short time, said things which caused Morrow to doubt the veracity of the story which Williams had told about Runnels' death. Morrow testified that she asked Williams in private, "Come on Jessie, that (her previous accounts of the shooting) can't be true what you've been telling us because . . . (of the account told by the new inmate, which had caused Morrow to doubt the truth of Williams' account) . . . I never heard anything about that." Williams replied: "Well, you promise not to tell anybody?" Morrow said, "I guess so. Who would I tell?"

Williams then related to Morrow a different account of Runnels' death, in which Williams admitted that she and Washington had talked about how Williams could get rid of Runnels, because Williams had been trying (unsuccessfully) to get Runnels to leave her house. Morrow testified that Williams admitted that she did not have her child with her at the time of the shooting; that she went home to the residence she shared with Runnels and "snuck in the back door"; that she was wearing gloves, and had a "palm gun" with her (which she used to kill Runnels); that Runnels was sitting in the living room playing with his pocket knife; and that Williams said nothing to him, but just shot him. Morrow continued

her testimony, saying that Williams had said that she couldn't figure out any other way to get Runnels out of the house; that after shooting Runnels she left by the back door; and that Washington came to Williams' house to get the palm gun, which Washington then took to her own house, as far as Williams knew; and that Lloyd Williams waited down the street to pick her up whenever she came out of the house, which he did. Morrow further testified that Williams showed no remorse while relating this second story to Morrow; that Williams never cried or seemed upset while talking about the shooting; and that Williams told Morrow that she planned to act crazy at trial in order to make the jury feel sorry for her, and that Williams expected that she would succeed because she was a pretty good actress.

Morrow also testified that "The first thing she (Williams) did when everybody came in (to the jail) she'd ask them what they were there for, and then she'd wait, and would kind of say, 'Well, I'm in here for first degree murder.'"

Defense counsel objected to this testimony as going too far afield of the State's announced purpose of rebutting Williams' testimony that she was sorry that Runnels was dead; and that she had no aid in the shooting. The court noted, outside the presence of the jury, that "it was certainly outside your (the State's) announced use of the witness in rebuttal ... I believe—I think legally that he (defense counsel) can't do anything about it."

Ms. Williams' first ground of error asserts that the trial court erred in allowing Pat Morrow, a jailmate of Williams', to testify concerning oral statements made to Morrow by Williams while both were in custody in jail, without first conducting a *Jackson v. Denno, supra,* type hearing, outside the presence of the jury, to separately consider and determine: whether Morrow was acting as an agent of law enforcement officials; and if so, whether Morrow warned Williams of her constitutional rights prior to questioning Williams; and if not, whether Williams' statements were made under voluntary conditions.

We note that the State would characterize Morrow's testimony as rebuttal impeachment evidence, admissible to rebut certain statements made by Williams on direct examination, and to demonstrate the State's good faith in a line of questions recited above and challenged by defense counsel; and *not* as a confession or statement made by Williams in response to custodial interrogation on the part of an agent of law enforcement officials, which was the position taken by defense counsel at trial. A debate over these positions proves illusory. The question of whether Williams' oral statements, used to impeach her at trial, are also to be treated as a confession was settled by the 1977 amendments to V.A.C.C.P. art. 38.21 and art. 38.22.

In the previous article the terms "confession" and "statement" were used interchangeably. In the new article the consistent use of "statement" throughout is more than a stylistic change. It should eliminate disagreement, as occurred under the prior law, regarding whether the statute applies to exculpatory as well as inculpatory statements. This disagreement split the members of the Texas Court of Criminal Appeals in *Harrison v. State,* 556 S.W.2d 811 (Tex.Cr.App.1977). At trial, the State had been allowed, over objection, to introduce testimony of a police officer that the accused told officers during his post-arrest ride to the station that he accidentally had shot the victim while cleaning his gun. The officer's testimony contradicted the accused's testimony at trial that he was getting a pack of cigarettes when the victim was shot. Under the court's earlier decision in *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App. 1973), if the statement used to impeach was inadmissible on the issue of guilt, it could not be used for the collateral purpose of impeachment. Accordingly, the State argued that Article 38.22 (which would have made the statement inadmissible) did not apply because the statement was not a *confession* but was an "exculpatory" *statement.* The court disagreed

in a split decision and held that the distinction between exculpatory and inculpatory statements was not relevant to an application of the Texas statute. Rather, the *relevant inquiry was how the statement was subsequently used, not what label was attached to the statement.* The court found that *"the oral statement of the appellant was introduced by the State to negative and destroy his defense of alibi and is therefore incriminating evidence in the nature of a confession."* The court determined that its holding was consistent with the legislative intent found in the statute's repeated use of the phrase "statement or confession" to prohibit all incriminating statements. Substitution of the word "statement" should resolve doubts that both exculpatory and inculpatory statements are covered by the statute. *The critical factor in the admissibility of an accused's statement is not the content of the statement but the circumstances under which it was made.* [Emphasis added.]

Burbany, *The Texas Confession Statute: Some New Wine in the Same Old Bottle,* 10 Tex.Tech.L.Rev. 67, 68–69 (1978).

It is clear that Williams requested a *Jackson v. Denno, supra,* type hearing, outside the presence of the jury which would assess her guilt or innocence, to separately determine, prior to the admission of Morrow's testimony concerning the statements, the voluntariness of her oral statements to Morrow. The relevant inquiry on appeal is whether the denial of this request by the trial court constitutes reversible error, not how the oral statement should be properly categorized or labeled.

*Jackson v. Denno, supra,* established the constitutionally approved procedure for a determination of the voluntariness of oral statements made by an accused, as well as guidance in the determination of when this procedure is triggered:

It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, ... and even though there is ample evidence aside from the confession to support the conviction.... Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth of falsity of the confession....

\* \* \* \* \* \*

A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined....

\* \* \* \* \* \*

Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—*facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence....* Where pure factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court and the trial court's determination, *pro tanto,* takes on an increasing finality. The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. These procedures must, therefore, be fully adequate to insure a

reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend.... [Emphasis added.]

The Texas Court of Criminal Appeals reviewed *Jackson v. Denno, supra,* in *Lopez v. State,* 384 S.W.2d 345 (Tex.Cr.App.1964). The *Lopez* court stated, at page 348:

In new trials arising hereunder and in future trials in this state where there is a fair question of voluntariness of a confession of the defendant, the trial judge shall grant to the defendant the opportunity to object to the use of said confession; shall grant a fair hearing before the Court on the issue of voluntariness, and from all of the evidence and without regard to the truth of falsity of the confession, shall make a clear cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend. *Upon request, such hearing shall be held and the court's ruling made in the absence of the jury.* Unless the trial judge is satisfied that the confession was voluntarily made he shall exclude it. If the confession has been found to have been voluntarily made and held admissible by the Court, it is recommended that the trial judge enter an order stating his findings, which order should be filed among the papers of the cause but not exhibited to the jury. Should the defendant testify at such a hearing, the cross-examination of the defendant shall be limited solely to the facts surrounding the voluntariness of the confession, and the defendant shall not be subject to cross-examination except for the limited purpose of facts involving the voluntary nature of his confession, nor shall the defendant be compelled to take the stand upon the trial of the cause upon its merits because of his testimony at this hearing.

Only those confessions which the trial judge actually and independently determines from all of the evidence to be voluntary shall be admitted as evidence before the jury.

After a confession has been admitted in evidence to the jury, the defendant may still adduce evidence relating to its voluntariness, which evidence may be considered by the trial judge with other evidence on the issue of its voluntariness.

V.A.C.C.P. art. 38.22, § 6 sets forth statutory requirements for the determination of the voluntariness of oral statements by an accused:

Sec. 6. *In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions.* If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause. Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner. Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be *instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose* nor any evidence obtained as a result thereof. In any case where a motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in his finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial. However, the state or the defendant shall be entitled to present any new evidence on the issue of the volun-

tariness of the statement prior to the court's final ruling and order stating its findings. [Emphasis added.]

▮▮▮ We discern two requirements which are triggered by a proper request for a determination of the voluntariness of a statement. First, the trial judge must make an independent finding, absent the jury, as to whether the statement was made under voluntary conditions. This procedure was mandated in *Jackson v. Denno, supra,* and has come to be known as a *Denno* hearing.[2] Should the statement be found voluntarily made, the court must then enter an order stating its conclusions along with specific findings of fact. Second, should the judge find that the statement was not voluntarily made, it should not consider the statement for *any* purpose, nor any evidence obtained as a result thereof. Here, the oral statements were used to negative and destroy Williams' self defense theory, and to impeach her testimony, and it is therefore incriminating evidence in the nature of a confession. See *Harrison v. State,* 556 S.W.2d 811 (Tex.Cr.App.1977). Therefore, even though the use of the statements was characterized by the State as prior inconsistent statements, used only to impeach Williams, a hearing and instruction to the jury are mandated by case and statutory law, and should have been given by the trial court.

However, neither of these requirements of V.A.C.C.P. art. 38.22, § 6 was complied with. The record reflects that neither counsel nor the court were cognizant of recent changes in case and statutory law; resulting in confusion over the allowable use of Williams' statements to Morrow. The defense took the position that statements made by a defendant while in custo-

dy are *ipso facto* inadmissible, relying on *Jimmerson v. State,* 561 S.W.2d 5 (Tex.Cr. App.1978), and *Easely v. State,* 493 S.W.2d 199 (Tex.Cr.App.1973).

The State was unable to rebut this position, but the court had already allowed the statements to be heard by the jury, as it had denied Williams' request for a determination of the voluntariness of Williams' oral statements to Morrow.

Prior to the 1977 amendment to Art. 38.22, supra, effective August 29, 1977, there was a long standing rule that an oral statement of an accused, whether made in response to an interrogation or not, while "in jail or other place of confinement or in the custody of an officer," was *ipso facto* inadmissible unless it fell within a statutory exception to Art. 38.22, supra. Oral statements made by an accused to jail inmates concerning a crime for which the accused was in custody did not fall within one of these statutory exceptions and were therefore inadmissible. *Jimmerson v. State,* supra; *Easely v. State,* supra.

The 1977 amendment to Art. 38.22, supra, now provides that the limitations of the statute apply only to statements that are the product of custodial interrogations; a *voluntary oral statement is admissible if it is not the "result of"* or does not *"stem from custodial interrogation."* The statement from appellant to Mizelle Miller, which was made well after the effective date of the amendment, was not the product of a "custodial interrogation," as that term is defined in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See *Newberry v. State,* 552 S.W.2d 457 (Tex.Cr.App.1977); *Bailey v. State,* 532 S.W.2d 316 (Tex.Cr.

---

**2.** "Pointing out that the Supreme Court has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances, the court in *Pinto v. Pierce* (1967) 389 US 31, 19 L Ed 2d 31, 88 S Ct 192, reh den 389 US 997, 19 L Ed 2d 499, 88 S Ct 462, held that no federal constitutional rights of an accused were violated by holding a hearing on the voluntariness of his confession in the presence of the jury, where the confession was afterward held voluntary

and admitted as evidence suitable for consideration by the jury, where there was no claim that because the hearing was held in the presence of the jury it was inadequate or had any other unfair consequences for the accused, and *where the accused consented to having the voluntariness of his admission considered in the presence of the jury.*" [Emphasis added.] *Pinto v. Pierce,* 19 L.Ed.2d 1313, Annotation at 1321 (1967).

App.1975). *Moreover, there is no evidence that Mizelle Miller was ever acting as an agent of law enforcement officials in his conversation with the appellant .... [Emphasis added.]* *May v. State,* 618 S.W.2d 333, 348 (Tex.Cr. App.1981).

What little testimony which was given before the jury upon the issue of whether Morrow was acting as an agent of the State was not heard until after Morrow had testified concerning Williams' oral statements. A bill of exceptions provides more information on appeal. *Rumbaugh v. State,* 589 S.W.2d 414 (Tex.Cr.App.1979), dealt with a recording of conversations between officers and inmates of a county jail. These inmates did not know that the recordings were being made. The court noted the 1977 amendments to V.A.C.C.P. art. 38.22 (specifically as they pertained to electronic recordings of oral statements made as a result of custodial interrogation; which may now be used to impeach defendants, if those defendants have been warned that a recording is being made). The court then went on to state, at page 419:

> The point is to demonstrate the continuing strength of the Legislature's policy against the admission into direct evidence of oral confessions made informally. We note that, with two exceptions, all types of admissible oral and written confessions require some formalities in their making: written and signed statements that show on their face that they were made after statutory warnings were given, statements made at an examining trial, and (now) electronically recorded statements that were made in the presence of two witnesses after warnings were given (including a warning that the recording was being made). Article 38.22, V.A.C.C.P. Perhaps these requirements of formalities are designed to guard against the danger that casually made oral statements are

"so liable to be misunderstood." See *Pierson v. State,* 145 Tex.Cr. 388, 168 S.W.2d 256, 259 (1943). Especially might this danger be great if an accused, who did not know his words were being recorded, were engaged in boasting and in making himself out to be a fearsome desperado in the eyes of his companions and in the face of peace officers. Anyone who listened to the entirety of this recording would conclude that the 18-year-old appellant was doing just that.

The record on appeal reflects that Williams boasted of her alleged offense to fellow inmates. There is a danger that her oral statements to Morrow, and indeed to any other inmate, are "liable to be misunderstood."

However, we do not presume to determine on appeal the question of whether Williams' statements were voluntary. That task was properly for the trial court and jury to determine. But, *May v. State, supra,* clearly demonstrates that evidence that an informant jailmate witness was acting as an agent of law enforcement officials in her conversation(s) with an indicted defendant bears directly upon the determination of the voluntariness of that defendant's oral responses and statements. The trial court failed to make the reliable, clear cut, and independent determination of the voluntariness of William's statement mandated by *Jackson v. Denno, supra, Lopez v. State, supra,* and art. 38.22, upon proper request[3] by Williams that it do so.

We find error in that the trial court's response to Williams' proper request does not comport itself to case or statutory law.

Moreover, in view of the *Jackson v. Denno* application to this case, we are confronted with the application of the federal—constitutional—error rule. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There the Supreme Court recognized that

---

**3.** "[T]o raise the question" (of voluntariness) this court has never held that a formal request was absolutely essential to a separate hearing on the admissibility and voluntariness of an extrajudicial confession. Such a holding in fact would be contrary to the facts and decision in

Jackson. Where the State relies upon an extrajudicial confession in the presentation of its case the trial court would be well advised to exercise some sua sponte responsibility in this area." *Figueroa v. State,* 473 S.W.2d 202, 204 (Tex.Cr.App.1971).

"harmless error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden finds its way into a trial in which the question of guilt or innocence is a close one." *Id.* at 22, 87 S.Ct. at 827. Citing its prior opinion in *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) that "the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" the Supreme Court in *Chapman* went on to state that it was adhering to the meaning in *Fahy* that before a federal constitutional error can be held harmless, the court (including an appellate court) must be able to declare a belief that it was harmless beyond a reasonable doubt. In the present case we are unable to declare that the error was harmless beyond a reasonable doubt.

*Ladd v. State,* 629 S.W.2d 139, 141 (Tex. App.—Dallas 1982).

In applying *Ladd, supra,* we find the trial court's error reversible, rather than harmless, and reverse and remand. We do not have in our procedure any authority to grant a separate hearing on the evidentiary issue of the voluntariness of Williams' statements. We have no alternative but to grant Williams a new trial. *Lopez v. State, supra,* at 348.

Lest there be confusion here, we point out that we do not hold that statements made to a fellow jail inmate, not an agent of law enforcement officials, concerning a crime for which the accused was in custody must meet the requirements of V.A.C.C.P. art. 38.22 to be admissible. See generally, *May v. State, supra.* See also *Simmons v. State,* 629 S.W.2d 38, 40 (Tex.Cr.App.1982), where Simmons failed to object to the use of such testimony. We do not find that oral "in custodial" statements necessarily are "a result of", or "stem from custodial interrogation" as these terms are used in V.A.C.C.P. art. 38.22, § 5. "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). See also *Newberry v. State,* 552 S.W.2d 457, 461 (Tex.Cr.App.1977). Such interrogation is questioning initiated by law enforcement officers that is directed towards eliciting an incriminating response. *Bailey v. State,* 532 S.W.2d 316, 321 (Tex.Cr. App.1975).

■ Williams' second ground of error contends that the oral statements made to Morrow were inadmissible as evidence, and that it was therefore error as a matter of law to admit Morrow's testimony concerning the oral statements by Williams, and improper for the State to cross-examine Williams as to the theory contained therein, namely, that Williams had the help of two others in killing Runnels. We agree.

We recognize that the use of a confession or any other statement to impeach a defendant witness' testimony is not precluded if the statement was made, and is offered, under the proper circumstances. For example, V.A.C.C.P. art. 38.22, § 3, allows the use of oral statements made as a result of custodial interrogation "to the purpose of impeachment only" and only if it is electronically recorded under carefully circumscribed conditions. "The concern over the reliability of oral statements is nowhere better reflected than in this provision. The recording has as its obvious purpose the insuring of reliability—to prevent misunderstanding, fabrication, and impossibility of contradiction." *Burbany, supra,* at 84. Also, in *Girndt v. State,* 623 S.W.2d 930 (Tex.Cr.App.1981), the trial court properly allowed the State to impeach Girndt with his prior oral statement, even though made while in custody; where Girndt had testified at trial, and the statement was not admitted until the State's rebuttal, and where *Girndt was afforded, upon objection, a separate Denno type hearing,* outside the presence of the jury, *to determine the statement's voluntariness.* The *Girndt* court states, in a footnote on page 932:

**900**

Appellant neither contended in the trial court nor does he raise the issue on appeal of whether it is necessary that a *Miranda* type legal warning be first given to the accused before an oral in-custody statement may be admissible for impeachment purposes. For this reason, we pretermit a discussion of that issue for another day. Compare, however, *Newberry v. State,* 552 S.W.2d 457 (Tex. Cr.App.1977); Art. I, Sec. 10, Texas Constitution.

This issue left for another day in *Girndt* is before this court today, as Williams did raise the above issue, in the context of her contention that Morrow was an agent of law enforcement officers, and that Morrow deliberately questioned Williams in the hope of eliciting incriminating responses.

■ We hold that in cases where it is established by the proper procedures (see *Jackson v. Denno, supra; Lopez v. State, supra;* art. 38.22, § 6) that an oral in custodial statement was given in response to questioning by an agent of law enforcement officials, who sought to elicit such incriminating statements, *Miranda* warnings must have first been given by that agent for the statement to have been voluntarily given. *Miranda v. Arizona, supra;* and *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). See also *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); and *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), decided on 6th Amendment grounds, finding a denial of Henry's right to counsel where Henry made incriminating statements to a paid government informer, and holding that the right to counsel includes the right not to have incriminating statements deliberately elicited by government agents outside counsel's presence. Therefore, Henry's incriminating responses were held inadmissible for any purpose.

We reverse and remand for a new trial.